LEUCADIA, INC.

v.

**APPLIED EXTRUSION TECHNOLOGIES, INC., Richard I. Burstein, Proposed Intervenor, Appellant.**

No. 92–7462.

United States Court of Appeals, Third Circuit.

Argued March 29, 1993.

Decided June 25, 1993.

158

Susan Schneider Thomas (Argued), Zlotnick & Thomas, Bala Cynwyd, PA, Jeffrey S. Goddess, Rosenthal Monhait Gross & Goddess, P.A., Wilmington, DE, for appellant.

Kevin G. Abrams (Argued), David L. Finger, Richards, Layton & Finger, Wilmington, DE (John D. Donavan, Jr., Ropes & Gray, Boston, MA, of counsel), for appellee.

Before: SLOVITER, Chief Judge, COWEN and NYGAARD, Circuit Judges

## OPINION OF THE COURT

SLOVITER, Chief Judge.

This case requires us to consider once again the contours of the common law right of public access to judicial records, a right that is well established in this circuit. *See, e.g., Republic of the Philippines v. Westinghouse Elec. Corp.,* 949 F.2d 653 (3d Cir.1991); *Littlejohn v. BIC Corp.,* 851 F.2d 673 (3d Cir.1988); *Bank of America Nat'l Trust & Savings Ass'n. v. Hotel Rittenhouse Assocs.,* 800 F.2d 339 (3d Cir.1986). In the district court, Richard I. Burstein moved to intervene permissively in a settled lawsuit for the limited purpose of modifying a court-imposed protective order to gain access to material that had been filed with the court under seal pursuant to that order. The district court refused to allow Burstein to intervene for this limited purpose. Burstein appeals.

### I.

### FACTS AND PROCEDURAL POSTURE

Leucadia, Inc., a leading producer of extruded strong net products, filed an action in the United States District Court for the District of Delaware in November 1990 against Applied Extrusion Technologies, Inc. (AET), its business competitor, alleging misappropriation of trade secrets relating to AET's production of the nets (the Leucadia action). The gravamen of Leucadia's complaint for injunctive relief and damages focused on AET's hiring of several former Leucadia employees who had access to confidential technical information and customer lists.

The parties filed a joint motion for a protective order covering documents and materials produced during pretrial discovery, relying on the sensitive commercial issues raised in the complaint. On December 11, 1990 the district court entered the requested order, which specified that all "confidential information" produced by the parties would be filed with the district court under seal and would be used solely in the pending dispute between Leucadia and AET.[1] The order fur-

---

1. The relevant portions of the protective order read as follows:

This matter having come before the Court on stipulated motion of [the parties] for entry of a protective order pursuant to Fed.R.Civ.P. 26(c), and the Court having been advised that confidential and proprietary information may be disclosed in discovery and at trial of this cause, it is hereby ORDERED that:

If in the course of proceedings in this action a party or nonparty witness (the "producing party") discloses trade secrets or research and development or other confidential technical, scientific, commercial or financial information, within the meaning of Rule 26(c) of the Federal Rules of Civil Procedure, the following procedure shall be employed:

1. All confidential information produced or exchanged pursuant to pretrial discovery in this litigation shall be used solely for the purpose of this litigation except by further order of the Court....

2. "Confidential" information as used therein means any type or classification of information which is designated as "confidential" by a party pursuant to the procedures of this Order, whether that information be a document, information contained in a document, information revealed during a deposition, information revealed in an interrogatory answer, answers to requests for admission or otherwise. In designating information as "confidential," a party will make such designation only as to that information that it in good faith believes

ther provided that either party could designate any document or part thereof as confidential provided that the party in good faith believed that the information so designated constituted "financial [information], trade secrets or confidential or proprietary information or know-how of such party." App. at 11. The district court was not required to review a party's confidentiality designation unless the opposing party objected, in which case the designating party would have the burden of proving that the information was appropriately subject to the confidentiality and sealing provisions of the order.[2]

With the entry of the protective order, Leucadia and AET commenced pretrial discovery. In the course of pretrial proceedings, the parties filed under seal certain motions to which were attached discovery documents or unsealed motions together with sealed exhibits.[3] In the district court's published opinion denying AET's motion to dis-

miss the complaint and for a more definite statement, directing Leucadia to file an amended complaint, and temporarily postponing Leucadia's discovery to permit AET to ascertain from Leucadia the trade secrets which AET allegedly misappropriated, the court made references to some of the sealed material without disclosing their contents. *See Leucadia, Inc. v. Applied Extrusion Technologies, Inc.,* 755 F.Supp. 635 (D.Del. 1991).

After the parties conducted additional discovery, AET filed a counterclaim and Leucadia moved for a preliminary injunction. Before a hearing on Leucadia's motion could be held, however, the parties reached a settlement of their dispute which they filed under seal. On August 23, 1991, the district court dismissed the case with prejudice pursuant to the terms of the settlement, but noted that it "retain[ed] jurisdiction over the parties for

---

to constitute financial [information], trade secrets, or other confidential or proprietary information or know-how of such party.

. . . . .

9. No person may disclose, in public or private, designated material except as set forth in this Order; but nothing contained in this Order shall affect the right of any designating party to disclose to anyone information it designated as "confidential."

10. Nothing herein shall prevent disclosure of confidential information beyond the terms of this Order if each and every party consents to such disclosure, or, if the Court, after notice to all parties, orders such disclosure....

. . . . .

13. All transcripts, depositions, exhibits, answers to interrogatories and other documents and things filed with the Court pursuant to the pretrial discovery of any party to the litigation which have previously thereto been marked by a party as comprising or containing confidential information ... or any pleading or memorandum purporting to reproduce or paraphrase such information, shall be filed in sealed envelopes....

14. Promptly upon final termination of this action, including appeals and any injunctive relief, each party having documents containing confidential information or material designated as confidential by another party or nonparty witness shall assemble and return to the producing party all such documents and materials.... Insofar as the provisions of this Order entered in this action restrict the communication and use of the documents produced thereunder, this Order shall continue to be binding after the conclusion of this litigation.

App. at 10, 11, 15, 16, 17.

2. The record reveals that the district court adjudicated only a single confidentiality dispute under the protective order. On June 6, 1991, the court granted AET's motion to unseal twelve pages of a deposition transcript that AET believed was material to a public offering of its common stock. The court concluded that the deposition did not contain trade secrets and that the need for disclosure required by the federal securities laws outweighed any harm to Leucadia.

3. These documents, which are contained in the sealed record on appeal, are: (1) an itemization of Leucadia's trade secrets and confidential business information and the measures used to protect them (later attached AET's motion to dismiss and Leucadia's amended complaint, items (3) and (6) below); (2) a memorandum in support of AET's motion to dismiss and for a more definite statement; (3) an exhibit to that motion; (4) Leucadia's memorandum in opposition; (5) AET's notice to take the deposition of Leucadia; (6) exhibit A to Leucadia's first amended complaint; (7) an appendix to and memorandum in support of Leucadia's motion to shorten time for production of documents; (8) a memorandum in support of Leucadia's motion for a preliminary injunction; (9) an appendix to AET's motion for preclusion of evidence; (10) an appendix to AET's motion to compel production of documents; (11) an appendix to AET's motion to compel an answer to interrogatories; and (12) the parties' settlement agreement.

the limited purpose of enforcing ... the settlement agreement...." App. at 68.

In December 1991, Burstein, a stockholder of AET, filed a class action suit against the corporation and its directors in the United States District Court for the District of Delaware (the Burstein action). Burstein's complaint alleged that the defendants violated federal securities laws by making false and misleading statements regarding the corporation's business prospects, including the failure to disclose adequately the consequences of the Leucadia litigation and settlement, in a prospectus issued as part of a public offering of AET securities in 1991.

On May 21, 1992, nine months after the Leucadia litigation was dismissed with prejudice, Burstein filed a motion for permissive intervention to unseal the documents filed pursuant to the protective order in the Leucadia action. Burstein sought to "(a) obtain and examine all documents and papers filed with the Court under seal; (b) take discovery, including subpoenas for documents and materials in the possession of others who are currently bound by the protective order; and (c) use the items examined or obtained ... in the course of the collateral securities action." App. at 73.

The district court held a hearing on Burstein's motion on June 26, 1992 at which AET opposed the intervention. Leucadia initially expressed a willingness to permit Burstein to inspect the documents, provided that the district court could ensure their confidentiality and limit their use to the collateral securities litigation. Burstein agreed to be bound by these conditions and by the terms of the protective order. Burstein conceded that an order entered several days earlier in the Burstein action staying all merits-related discovery pending a ruling on AET's motion to transfer[4] precluded him from using the formal tools of discovery to obtain information concerning the securities litigation from any party to that dispute. Thus, at the hearing, Burstein limited his intervention request to examining and copying the documents filed under seal.

The district court denied Burstein's motion. The court did not discuss the contents of the documents, noting only that it had approved "a comprehensive protective order relating to information obtained in discovery ... because of the ultra sensitive nature of both parties' trade secrets." App. at 124–25. The court also stated that the stay order in the Burstein action was the "law of the case in the securities action and this ruling should not be ignored by another judge of the same court." App. at 125–26. Finally, the court addressed Leucadia's confidentiality concerns:

> [T]his Court does not know how to deliver these assurances [regarding confidentiality]. The Court surely is in no position to examine the documents *in camera* and sort out documents in the manner Leucadia suggests. The simplest way would be to open the file to the public of all documents now under seal but neither party desires this. Thus Burstein has not shown sufficient reason to discover the documents under seal in this action and the motion to intervene [is] accordingly denied.

App. at 126.

The district court denied Burstein's motion for reargument and Burstein filed a timely notice of appeal. We have jurisdiction under 28 U.S.C. § 1291. *See Westinghouse*, 949 F.2d at 658 n. 4 ("[O]rders ... denying a motion to unseal are collateral orders within the meaning of 28 U.S.C. § 1291."); *Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 472 (9th Cir.) (order denying motion to intervene for limited purpose of modifying protective order "appealable either as a final order ... or as a collateral order"),

---

4. On August 25, 1992, the court in the Burstein action granted AET's motion to transfer the case to the district of Massachusetts. *See Burstein v. Applied Extrusion Technologies, Inc.*, 829 F.Supp. 106 (D.Del.1992). The parties dispute whether the stay of discovery is still in effect now that the case is pending in the district of Massachusetts. AET asserts that it will seek a continuation of the stay pending a ruling on its motion to dismiss Burstein's complaint. *See* Brief for Appellee at 6 n. 3. We assume the continuation of the stay for purposes of this opinion.

*cert. denied,* —— U.S. ——, 113 S.Ct. 197, 121 L.Ed.2d 140 (1992).[5]

## II.

## DISCUSSION

### A.

### The Common Law Right of Access

■ In numerous cases since our decision in *United States v. Criden,* 648 F.2d 814 (3d Cir.1981), this court has acknowledged the existence of a pervasive common law right "to inspect and copy public records and documents, including judicial records and documents." *Id.* at 819 (quoting *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597, 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570 (1978)). The existence of this right, which antedates the Constitution and which is applicable in both criminal and civil cases, is now "beyond dispute." *Littlejohn,* 851 F.2d at 677–78 (quoting *Publicker Indus., Inc. v. Cohen,* 733 F.2d 1059, 1066–67 (3d Cir.1984)).[6]

■ As we recently explained, the presumption that the public has a right to inspect and copy judicial records serves numerous salutary functions:

> The public's exercise of its common law access right in civil cases promotes public confidence in the judicial system.... As with other branches of government, the bright light cast upon the judicial process by public observation diminishes the possibilities for injustice, incompetence, perjury, and fraud. Furthermore, the very openness of the process should provide the public with a more complete understanding of the judicial system and a better perception of its fairness.

*Westinghouse,* 949 F.2d at 660 (quoting *Littlejohn,* 851 F.2d at 678). In addition, "[a]ccess to civil proceedings and records promotes 'public respect for the judicial process' and helps to assure that judges perform their duties in an honest and informed manner." *Id.* (citation omitted) (quoting *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 606, 102 S.Ct. 2613, 2619, 73 L.Ed.2d 248 (1982)).

Accordingly, we have applied the presumption of public access to a wide variety of civil records and documents, including papers filed in connection with a motion for summary judgment, *Westinghouse,* 949 F.2d at 660–62; the transcript of a civil trial and exhibits admitted at trial, *Littlejohn,* 851 F.2d at 678–80; settlement documents and post-settlement motions seeking to interpret and enforce the agreement filed with the district court, *Bank of America,* 800 F.2d at 343–46; and transcripts of a hearing for a preliminary injunction, *Publicker,* 733 F.2d at 1066–67.

In *Bank of America,* where we held that the presumption of public access attached to a settlement agreement and to post-settlement motions, we acknowledged the strong interest in encouraging speedy settlement of private disputes, but nevertheless explained that "[o]nce a settlement is filed in the district court, it becomes a judicial record, and subject to the access accorded such records." 800 F.2d at 344–45. Indeed, it was the act of filing *vel non* that triggered the presumption of access, since the parties could have easily shielded their settlement from public scrutiny by filing a stipulation of dismissal pursuant to Fed.R.Civ.P. 41(a)(1). *Id.* at 344.

Numerous other courts have also recognized the principle that the filing of a docu-

---

**5.** Although AET has not contested the procedure by which Burstein sought to gain access to the sealed records, we note that a district court may properly consider a motion to intervene permissively for the limited purpose of modifying a protective order even after the underlying dispute between the parties has long been settled. *See, e.g., United Nuclear Corp. v. Cranford Ins. Co.,* 905 F.2d 1424, 1427 (10th Cir.1990) (permitting intervention three years after underlying action had settled and noting that "courts have widely recognized that the correct procedure for a non-party to challenge a protective order is

through intervention for that purpose"), *cert. denied,* 498 U.S. 1073, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991); *Beckman,* 966 F.2d at 471–73 (same, for intervention motion filed two years after case was settled and dismissed).

**6.** In addition, we have stated that the First Amendment, independent of the common law, protects the public's right of access to the records of civil proceedings. *Westinghouse,* 949 F.2d at 659. In this case, however, we limit our inquiry to the common law.

ment gives rise to a presumptive right of public access. *See, e.g., FTC v. Standard Fin. Mgmt. Corp.,* 830 F.2d 404, 409 (1st Cir.1987) ("documents which are submitted to, and accepted by, a court of competent jurisdiction in the course of adjudicatory proceedings, become documents to which the presumption of public access applies"); *Crystal Grower's Corp. v. Dobbins,* 616 F.2d 458, 460–61 (10th Cir.1980) (right of access attaches to docketing statement, joint appendix and briefs filed in court of appeals); *Pratt & Whitney Canada, Inc. v. United States,* 14 Cl.Ct. 268, 273 (1988) (right of access attaches to "pleadings, orders, notices, exhibits and transcripts filed"); *In re "Agent Orange" Prod. Liab. Litig.,* 96 F.R.D. 582, 584 (E.D.N.Y.1983) (right of access attaches to documents filed with the district court); *In re Johnson,* 232 Ill.App.3d 1068, 174 Ill.Dec. 209, 598 N.E.2d 406, 410 (Ill.App.Ct.1992) ("Once documents are filed with the court, they lose their private nature and become part of the court file and 'public components' of the judicial proceeding to which the right of access attaches." (citation omitted)).

■ Burstein argues that the common law presumption of access is applicable as well to

the material filed under seal in this case, notwithstanding that some of it was generated as part of the discovery process. Before considering this question, it is important to recognize what is not before us. Burstein does not rely on the First Amendment as the basis for his claimed right of access to the discovery material. Nor does Burstein look to the Federal Rules of Civil Procedure as providing a basis for the relief that he seeks.[7]

In addition, because Burstein seeks only access to documents that are on file, this case does not implicate the standards to be used by the court in entering a pretrial protective order that prohibits the parties from disseminating in advance of trial information in their possession obtained through the discovery process, the issue resolved in *Seattle Times v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). And, finally, because all of the discovery documents at issue were filed in connection with motions that sought court action, such as Leucadia's motion for a preliminary injunction and AET's motion to compel certain discovery, we need not decide whether there is any right to access to discovery filed with the court unconnected with any motion.[8]

**7.** *See Public Citizen v. Liggett Group, Inc.,* 858 F.2d 775, 780, 788–90 (1st Cir.1988) (holding that public has presumptive right under Fed. R.Civ.P. 5(d) and 26(c) to inspect discovery materials filed with the district court and that "[t]he effect of . . . nonfiling was to deny the public the right it would otherwise have had to inspect freely the discovery materials in this case"), *cert. denied,* 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989); *In re "Agent Orange" Prod. Liab. Litig.,* 821 F.2d 139, 146–47 (2d Cir.) (holding that under Fed.R.Civ.P. 5(d) and 26(c) the public enjoys "a presumptive right of access to discovery materials" filed with the district court pursuant to a protective order), *cert. denied,* 484 U.S. 953, 108 S.Ct. 344, 98 L.Ed.2d 370 (1987); *see also United States ex rel. Stinson, Lyons, Gerlin & Bustamonte v. Prudential Ins. Co.,* 944 F.2d 1149, 1158–60 (3d Cir.1991) (holding that federal rules create presumption of access to civil discovery materials sufficient to satisfy False Claims Act provision barring *qui tam* actions based on publicly disclosed information).

**8.** *See* 8 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2042, at 298 (1970) ("Ordinarily a deposition is a public document freely open to inspection after it is filed with the clerk."); *Wilson v. American Motors Corp.,* 759 F.2d 1568, 1569, 1571 (11th Cir.1985) (right of access attaches to "pleadings, docket

entries, orders, affidavits or depositions duly filed, and transcripts or court reporter's notes of hearings or trial proceedings"). *But see Wilk v. American Medical Ass'n,* 635 F.2d 1295, 1299 n. 7 (7th Cir.1980) (no presumption of openness under the common law to filed discovery materials until entered into evidence).

Although it is no longer, if it ever was, prevailing practice to file all discovery, and the Clerks of the district courts would undoubtedly view with askance any effort to use their limited space for that purpose, it is clear that such filing is contemplated by the Federal Rules of Civil Procedure. Thus, Fed.R.Civ.P. 5(d) provides: "All papers after the complaint required to be served upon a party . . . shall be filed with the court within a reasonable time after service, but the court may on motion of a party or on its own initiative order that [discovery papers] not be filed unless on order of the court or for use in the proceeding."

The Advisory Committee Note to Rule 5 explains that in 1978 the Committee considered adopting a rule that discovery materials would not be filed unless the court ordered their filing, but retained the filing requirement because "such materials are sometimes of interest to those who may have no access to them except by a requirement of filing, such as members of a

Turning our attention then to the issue that is before us, whether there is a presumptive right of access based on common law principles to material generated through discovery filed with the court in conjunction with pending motions,[9] we find only sparse authority. In a case limited to requested access to documents submitted in connection with discovery motions, the First Circuit held that there is no common law right to inspect such documents because "[t]here is no tradition of public access to discovery, and requiring a trial court to scrutinize carefully public claims of access would be incongruous with the goals of the discovery process." *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 13 (1st Cir.1986).

In an extended discussion of this issue, the District of Columbia Court of Appeals in *Mokhiber v. Davis*, 537 A.2d 1100 (D.C.App. 1988), held that there was a presumptive common law right of public access to motions relating to the discovery process, such as the plaintiff's motion to amend the protective orders, the defendants' opposition thereto, and the defendants' opposition to motions to compel discovery. *Id.* at 1111–13. Although the court recognized that "[t]here is no common law tradition of access specifically directed to discovery hearings and to the pleadings submitted in connection with them," it rejected the argument that "the lack of a specific tradition of access to pretrial proceedings defeats any claim for a common law right of access to discovery motions." *Id.* at 1111–12. The court reasoned that modern discovery rules "have qualitatively altered the character of pretrial discovery and the demands it makes on the courts as well as on the parties." *Id.* at 1112.

The court stated that "[i]t would make little sense to shut off access for what is, practically speaking, a new kind of judicial proceeding just because that particular procedure did not exist at common law." *Id.* It

continued, "the Public should enjoy the right to view new kinds of proceedings when they are like traditional ones in this significant respect: that access will serve the same values and policies which underlie the common law's recognition of the public right to view other parts of court procedure." *Id.* The court then examined the policies supporting a presumption of openness and concluded that:

> [t]he manner in which [the discovery process] proceeds may prove decisive to the outcome of particular disputes, and the availability of mandatory discovery has greatly affected the way in which our courts do justice. Moreover, discovery procedures have become a continuing focus of controversy and reform within the judicial and the legal community. This debate has arisen precisely because discovery is so important in trial practice. If we take as our standard "that the public's right of access attaches to decisions of major importance to the administration of justice," then discovery motions and hearings fall within the ambit of this right.

*Id.* (quoting *Anderson*, 805 F.2d at 11).

It followed from the court's conclusion that there was a presumptive right of public access to discovery motions that there would also be a presumptive right of access to more substantive motions, in that case the defendants' oppositions to plaintiff's motions for a continuance and for amendment of the *ad damnum* clause of the complaint. *Id.* at 1100, 1113.

In this case, the material submitted under seal falls within both categories of motions considered in *Mokhiber*. Some of the sealed discovery material was filed in connection with Leucadia's motion for a preliminary injunction, AET's motion to dismiss and for a more definite statement, the exhibit to Leucadia's first amended complaint, and AET's motion for preclusion of evidence, which were

---

class, litigants similarly situated, or the public generally." Fed.R.Civ.P. 5(d) advisory committee's note to 1980 amendment.

**9.** It has not been suggested that the "raw fruits" of discovery in the possession of private litigants that have not been filed with the court are subject to any right of access. As we explained in *Bank of America*, "discovery ... which is ordi-

narily conducted in private, stands on a different footing than does a motion filed by a party seeking action by the court." 800 F.2d at 343. See *Mokhiber v. Davis*, 537 A.2d 1100, 1109 (D.C.App.1988) ("no right of public access to pretrial depositions, interrogatories, and documents gained through discovery").

not merely motions relating to discovery. In contrast, the material submitted with respect to AET's motions to compel production of documents and answers to interrogatories and Leucadia's motion to shorten time for production of documents can be characterized as discovery motions.

We believe that our earlier decisions and those in other courts lead ineluctably to the conclusion that there is a presumptive right of public access to pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith. In *Bank of America*, where we held that a settlement agreement should not be sealed, we stated that the presumption in favor of public access applies not only to all civil trials and records but also to "motions filed in court proceedings." 800 F.2d at 343. In *Westinghouse*, we affirmed the district court's order directing the unsealing of material filed in support of or in opposition to Westinghouse's motion for summary judgment, even though the district court had denied summary judgment, concluding that papers filed in connection with such a motion "are not entitled to be shielded from public access merely because the district court denied the motion rather than granted it." 949 F.2d at 661.

We see no reason to distinguish between material submitted in connection with a motion for summary judgment and material submitted in connection with a motion for preliminary injunction, an exhibit to a complaint, and a motion to dismiss and for a more definite statement. The same is, of course, true as to any filed settlement agreement, our precise holding in *Bank of America*. The rationale applied in *Bank of America*, where we stated that "the [district] court's ... action on a motion [is a] matter[ ] which the public has a right to know about and evaluate," 800 F.2d at 344, is equally applicable here. Thus at least to this extent

we agree with the *Mokhiber* court that "[b]y submitting pleadings and motions to the court for decision, one enters the public arena of courtroom proceedings and exposes oneself, as well as the opposing party, to the risk, though by no means the certainty, of public scrutiny." 537 A.2d at 1111.[10]

Significantly, our holding in *Westinghouse* left open the issue "whether there might be a basis to distinguish motions that are merely part of the discovery proceedings." 949 F.2d at 661. There are indeed some valid reasons why one could conclude that the common law presumptive right of access to pretrial motions is equally applicable to discovery motions and they were fully articulated by the *Mokhiber* court as set forth above. We are nonetheless reluctant for several reasons to extend the common law presumption of access to filed judicial records so far at this time.

In the first place, we cannot overlook the Supreme Court's statements in *Seattle Times*, albeit uttered in a different context, that "pretrial deposition and interrogatories are not public components of a civil trial. Such proceedings were not open to the public at common law and, in general, they are conducted in private as a matter of modern practice." 467 U.S. at 33, 104 S.Ct. at 2208 (internal citations omitted).

In the second place, a holding that discovery motions and supporting materials are subject to a presumptive right of access would make raw discovery, ordinarily inaccessible to the public, accessible merely because it had to be included in motions precipitated by inadequate discovery responses or overly aggressive discovery demands. This would be a holding based more on expediency than principle. Moreover, we do not know what the effect would be on the discovery process itself of holding such discovery presumptively accessible. *See Anderson*, 805 F.2d at 12 (permitting public access to dis-

---

10. In light of our holding, we need not rely on the possibility that some of the sealed documents would be presumptively public because they were referred to by the district court in its published opinion in *Leucadia*, 755 F.Supp. at 636–37. *See, e.g., Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F.Supp. 866, 901 (E.D.Pa. 1981) (Becker, J.) (right of access applies to

sealed documents "on which the court relies in making a ruling and which the court discusses in a published opinion"); *In re "Agent Orange" Prod. Liab. Litig.*, 98 F.R.D. 539, 545 (E.D.N.Y. 1983) ("documents referred to by the court in its opinions become part of the public record and should be open to the public for inspection and copying").

covery might actually make the civil discovery process "more complicated and burdensome than it already is"). The public policy implications of an expansion of the common law presumption of access to discovery motions are unclear, and this alone should counsel restraint. *See* Oliver W. Holmes, The Common Law 32 (Mark D. Howe ed., 1963) ("Every important principle which is developed by litigation is in fact and at bottom the result of more or less definitely understood views of public policy; most generally, to be sure, under our practice and traditions, the unconscious result of instinctive preferences and inarticulate convictions, but none the less traceable to views of public policy in the last analysis.").[11]

Finally, we see little need to extend the federal common law to discovery motions at this time when there is in existence a source of law for the normative rules governing public access to discovery materials, that is Rules 5(d) and 26(c) of the Federal Rules of Civil Procedure. It is significant that the First Circuit, notwithstanding its 1986 opinion in *Anderson* holding that there is no common law of access to discovery motions, held two years later in *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 789–90 (1st Cir.1988), *cert. denied*, 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989), that Rules 5(d) and 26(c) of the Federal Rules of Civil Procedure provide a basis pursuant to which a district court may lift its protective order precluding a party from making public unfiled discovery materials.[12]

We recognize that our holding that the common law of presumptive access to documents filed in court does not extend to material filed with discovery motions may lead the parties to shield from view material which should not be sealed. We need not decide here whether we would interpret the Federal Rules of Civil Procedure to permit a member of the public to challenge an overly protective

sealing order. *See In re "Agent Orange" Prod. Liab. Litig.*, 821 F.2d 139, 146 (2d Cir.) (permitting such intervention), *cert. denied*, 484 U.S. 953, 108 S.Ct. 344, 98 L.Ed.2d 370 (1987). We must rely in the first instance on the district courts to protect the legitimate public interest in filed materials from overly broad and unjustifiable protective orders agreed to by the parties for their self-interests. *See United States v. Corbitt*, 879 F.2d 224, 228 (7th Cir.1989) ("[T]he public's right to inspect judicial records may not be evaded by a wholesale sealing of court papers. Instead, the district court must be sensitive to the rights of the public in determining whether any particular document, or class of documents, is appropriately filed under seal.").

To recapitulate, we hold there is a presumptive right to public access to all material filed in connection with nondiscovery pretrial motions, whether these motions are case dispositive or not, but no such right as to discovery motions and their supporting documents.

## B.

### Countervailing Interests

■ Of course, the fact that a presumption of openness attaches to the discovery documents filed with the pretrial motions in this case does not end our inquiry. Although "the right of access is firmly entrenched, so also is the correlative principle that the right ... is not absolute." *Bank of America*, 800 F.2d at 344. Rather, "the strong common law presumption of access must be balanced against the factors militating against access. The burden is on the party who seeks to overcome the presumption of access to show that the interest in secrecy outweighs the presumption." *Id.* (citations omitted).

> 26(c)'s good cause requirement means that, '[a]s a general proposition, pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings.' " 858 F.2d at 789 (quoting *American Tel. & Tel. Co. v. Grady*, 594 F.2d 594, 596 (7th Cir.1978), *cert. denied*, 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979)).

---

11. We do not foreclose the possibility that accumulative experience may at some future time lead to expansion of the common law in this respect. *See* Richard L. Marcus, *The Discovery Confidentiality Controversy*, 1991 U.Ill.L.Rev. 457, 476.

12. Particularly surprising in light of *Anderson* is the court's statement in *Public Citizen* that, "Rule

Documents containing trade secrets or other confidential business information may be protected from disclosure. As the Supreme Court stated in *Nixon v. Warner Communications*, 435 U.S. at 598, 98 S.Ct. at 1312, "courts have refused to permit their files to serve as ... sources of business information that might harm a litigant's competitive standing." We too have explained that the presence of trade secrets in court records weighs against the right of access, although we have framed the inquiry as whether the need for secrecy outweighs the presumption of access that normally attaches to such documents. *See Westinghouse*, 949 F.2d at 663 (" '[t]he potential effects of the disclosure of business information that might harm the litigant's competitive standing may in some cases meet the burden of [justifying keeping] the judicial record under seal' ") (quoting district court opinion); *see also Littlejohn*, 851 F.2d at 685.

Under Fed.R.Civ.P. 26(c)(7), the district court, for good cause shown, may grant a protective order requiring that "a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way." Fed.R.Civ.P. 26(c)(7). However, the Rules also explain that "courts have not given trade secrets automatic and complete immunity against disclosure, but have in each case weighed their claim to privacy against the need for disclosure." Fed.R.Civ.P. 26(c) advisory committee's note to 1970 amendment. As we explained in *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir.1986), "Rule 26(c) places the burden of persuasion on the party seeking the protective order. To overcome the presumption, the party seeking the protective order must show good cause by demonstrating a particular need for protection. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."

We emphasized that "the burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the protective order; any other conclusion would turn Rule 26(c) on its head." *Id.* at 1122.

Because of the benefits of umbrella protective orders in complex cases, the court may construct a broad "umbrella" protective order "upon a threshold showing by one party (the movant) of good cause." *Id.* After delivery of the documents, the opposing party would have the opportunity to indicate precisely which documents it believed to be not confidential, and the party seeking to maintain the seal would have the burden of proof with respect to those documents. *Id.* Although our decision in *Cipollone* concerned the challenge by a party to the confidentiality designation made by its opponent, our reasoning applies with equal force when a nonparty moves to intervene in a pending or settled lawsuit for the limited purpose of modifying a protective order and inspecting documents filed under seal.

■ In entering the umbrella protective order in this case, the district court permitted the parties to designate any document as confidential and subject to filing under seal based solely on the parties' good faith determination that the document contained trade secrets or other confidential information. Although the record does not show that the district court ever made a finding that there was "good cause" for sealing any of the specific documents, the court was familiar with their general nature because they were submitted in connection with various motions. We have no reason to question the validity of the parties' initial confidential designations, but now that Burstein has moved to intervene to challenge the protective order, Leucadia and/or AET must make a "particularized showing of the need for continued secrecy" if the documents are to remain under seal. *See Bank of America*, 800 F.2d at 346; *see also In re "Agent Orange" Prod. Liab. Litig.*, 821 F.2d at 148 (where parties stipulated to umbrella protective order, district court acted within its discretion by vacating order and permitting access by intervenor to filed discovery materials "subject to a showing, on an individualized basis, of good cause for continued protection").

Our review of the record in this case demonstrates that the district court improperly placed the burden of proof on Burstein to provide a "sufficient reason to discover the

documents under seal," App. at 126, rather than requiring AET and/or Leucadia to demonstrate a particularized need for continuing to enforce the protective order. Moreover, the district court permitted all of the documents filed to remain under seal without conducting a document-by-document review of their contents, even after AET admitted in its letter brief that only *"certain* of the documents filed under seal in this proceeding . . . contain highly sensitive, non-public information which include trade secrets of AET and/or Leucadia." App. at 128 (emphasis added).

The district court's approach to Burstein's requests was inconsistent with our prior statements that careful factfinding and balancing of competing interests is required before the strong presumption of openness can be overcome by the secrecy interests of private litigants. *See Littlejohn*, 851 F.2d at 685 (finding no abuse of discretion where "[t]he district court carefully considered each of the factors which favored access or continued secrecy for the documents at issue and assigned appropriate weights to the various interests").

█ In light of the district court's improper allocation of the burden of persuasion and its failure to separate trade secrets and other sensitive business information from the settlement agreement and material filed with the nondiscovery pretrial motions that may properly be subject to disclosure, we will vacate the order denying Burstein's motion to intervene and remand this matter to permit the district court in the first instance to conduct a review of the documents on file. We reject Burstein's argument that we should ourselves direct lifting of the protective order. We have repeatedly emphasized that the required balancing should be done in the first instance by the district court. *See Criden*, 648 F.2d at 829 (remanding "so that the district court can exercise its discretion to determine whether specific portions of the [audio and video] tapes merit excision" before being released to the news media).

In determining whether any document or portion thereof merits protection from disclosure, the district court should be guided by our prior advice that continued sealing must be based on *"current evidence* to show how public dissemination of the pertinent materials *now* would cause the competitive harm [they] claim[ ]." *Westinghouse*, 949 F.2d at 663 (emphasis added). However, as to those materials that the district court determines to be bona fide trade secrets after carefully weighing the factors for and against access, it may properly order them to remain filed under seal subject to the terms of the protective order.

### C.

### *The Effect of the Stay In the Collateral Action*

AET suggests that because Burstein has been subject to a stay of discovery in his collateral securities action against AET and its officers,[13] there is no need for the district court to make the particularized inquiry directed above. Burstein seems to argue that because he has agreed to be bound by the confidentiality order under which access was given to the discovery materials in the *Leucadia* action, he has a special claim to access. We reject both arguments.

█ The Supreme Court has made it plain that all persons seeking to inspect and copy judicial records stand on an equal footing, regardless of their motive for inspecting such records. Thus, the press has no greater right of access than does the general public, *see Nixon v. Warner Communications*, 435 U.S. at 609, 98 S.Ct. at 1318 (relying on First Amendment), and more importantly, an intervenor who is also a litigant in a collateral proceeding enjoys no lesser rights merely because s/he desires to use public documents for his or her own benefit. As we have explained, "[t]he applicability and importance of the[ ] interests [favoring public access] are not lessened because they are asserted by a private party to advance its own interests in pursuing its lawsuits against [a party to the

---

13. As stated above, the Burstein action was transferred from the district of Delaware to the district of Massachusetts, where the status of the

stay order remains disputed by the parties. *See supra* note 4.

168

original action]." *Bank of America*, 800 F.2d at 345; *cf. Mayock v. Nelson*, 938 F.2d 1006, 1008 (9th Cir.1991) ("rights under [the Freedom of Information Act] are neither diminished nor enhanced by litigation-generated need for agency documents") (quotation omitted).

The discovery stay imposed in the collateral securities litigation does not change this result. Just as Burstein could, consistent with the stay order, continue to research the factual underpinning for his claim in libraries or other institutions where publicly available information is stored, so he may also inspect and copy those court records which any member of the public has a right to view.

We have no occasion to consider the scope of the stay order, which is not before us. We hold merely that to the extent that the sealed materials are subject to the common law right of access, they are open to all; there is no principled basis upon which Burstein may be barred from inspecting and copying them.

### III.

For the reasons set forth above, we will vacate the district court's order denying Burstein's intervention and remand for further proceedings consistent with this opinion.