Albert JACKSON, Plaintiff,

Donnie McKOY, Plaintiff,

Dawn PITT, Plaintiff,

v.

The DELAWARE RIVER AND BAY AUTHORITY, et al., Defendants,

The Press of Atlantic City, Intervenor.

Civil Action No. 99–3185 JBS.

United States District Court, D. New Jersey.

Sept. 24, 2002.

Joseph C. Grassi, Esquire, Rossi, Barry, Corrado & Grassi, P.C., Wildwood, NJ, for Plaintiffs.

Robert J. Partlow, Esquire (Argued), Philip Norcross, Esquire, Parker, McCay & Criscuolo, P.A., Marlton, NJ, and Donald E. Reid, Esquire, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for Defendants.

Nelson C. Johnson, Esquire (Argued), Johnson & DeMarco, Hammonton, NJ, for Intervenor The Press of Atlantic City.

## OPINION REGARDING MOTION TO INTERVENE

SIMANDLE, District Judge.

On the second day of trial in this case alleging racial discrimination in employment by a public agency, the parties reached a settlement agreement, and the jury was discharged. Presently before this Court is a motion to intervene in this closed case by The Press of Atlantic City ("The Press") for the limited purpose of learning the terms of the Settlement Agreement between plaintiffs and defendant Delaware River and Bay Authority ("DRBA"). Oral argument was heard on September 20, 2002.

The principal issues presented are whether The Press has standing to intervene, whether intervention is proper, what judicial documents this Court has authority over, whether access will be granted to the judicial documents, and whether this Court has jurisdiction to decide access issues regarding documents that are not judicial documents but are held by the defendant DRBA and are related to the settlement of this case.

For the reasons stated herein, this Court has decided to grant The Press' motion to intervene in part to allow The Press to access this Court's two judicial records that relate to the settlement, namely, a rough-drafted settlement agreement and the transcript of a court proceeding where the parties testified and stated their understanding of the terms of the rough-drafted settlement agreement. This Court will deny the motion to intervene in part as it pertains to access to the actual settlement agreement in the DRBA's records. This denial is without prejudice to The Press' seeking access to the agreement by filing a complaint that asserts proper jurisdiction and a cognizable claim in either this Court or a state court.

## I. BACKGROUND

The facts of the underlying case were discussed at length in this Court's two summary judgment opinions so will only be recounted here to the extent that they are pertinent to this matter. *See Jackson v. DRBA,* No. 99–3185, 2001 WL 1689880 (D.N.J. Nov. 26, 2001); *Jackson v. DRBA,* 220 F.Supp.2d 344 (D.N.J.2002).

The underlying dispute involved a consolidated employment case by plaintiffs Albert Jackson, Donnie McKoy, and Dawn Pitt who alleged racial discrimination by defendants Delaware River and Bay Authority ("DRBA") and various supervisory DRBA employees. The plaintiffs, all African–Americans, were employed by the Cape May–Lewes ferry, which is operated by the DRBA.

A jury trial in the matter began on June 11, 2002. Then, on June 12, 2002, with a jury empaneled but out of the presence of the jury, the parties conducted further settlement discussions and reached a settlement agreement. The parties, through their attorneys, drafted the terms of a settlement agreement on a legal pad and signed it to indicate their agreement to its terms, which was referred to as the "memorandum" or "settlement memorandum" consisting of four pages. Then, under oath, they placed on the record their understanding of the terms, making reference to the drafted settlement agreement, and stated their agreement to its terms. All understood that the settlement agreement included a confidentiality term. The court proceeding was not formally closed because no one was present except the interested parties, but it was undertaken with the understanding that the settlement terms were confidential by agreement of

the parties. Indeed, confidentiality was an express term of the agreement. It was agreed on June 12th that the Court would retain a copy of the settlement memorandum and that the case would be dismissed as settled, with the Court retaining jurisdiction to enforce the agreement if necessary. The settlement hearing of June 12, 2002 has not yet been transcribed, but, like almost any hearing, an interested member of the public or news gathering community can order a transcript at its own expense.

This Court then entered an Order that dismissed the action without prejudice to the right to reopen the action within 60 days if the settlement was not consummated. The jury was discharged.

Apparently, on June 13, 2002, The Press, a daily newspaper that serves readers throughout the Greater Atlantic City Region, learned that the action had been settled. (Press 8/7/02 Br. at 1.) Press reporters, Michael Diamond and Richard Degener, who had been covering the story, learned from James Salmon of the DRBA that the terms of the settlement were confidential and that The Press could not learn of them. (*Id.*)

The Press' legal counsel, Nelson C. Johnson, Esquire, then wrote letters to John T. Kelly, counsel for the DRBA, on June 18, 2002, June 25, 2002, and July 15, 2002 requesting the information and explaining its belief that the agreement is a public record that should be available to the press under the DRBA's Freedom of Information regulations. (Diamond Cert., Exs. A, B, C.) When the DRBA did not release the information, The Press filed this Motion to Intervene on August 12, 2002 for the limited purpose of learning the settlement terms.

## II. *ANALYSIS*

### A. *The Press' Standing*

As an initial matter, it is important to note that The Press has standing to intervene in this matter. The Third Circuit has "routinely found, as have other courts, that third parties have standing ... to obtain access to information or judicial proceedings." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 777 (3d Cir. 1994) (citations omitted). A newspaper has standing even if it "assert[s] rights that may belong to a broad portion of the public at large. So long as the 'injury in fact' alleged by each intervenor is 'a distinct and palpable injury to himself,' standing should not be denied." *Id.* (quoting *United States v. Cianfrani*, 573 F.2d 835, 845 (3d Cir.1978)).

Here, therefore, The Press, asserting the public's right to access judicial information, has standing to petition the court for access to judicial documents.

### B. *Intervention*

Also as an initial matter, it is important to establish that The Press may intervene in this action to seek judicial records. The Press has moved to intervene in accordance with Fed.R.Civ.P. 24(b) which states, in pertinent part:

Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.

The Third Circuit has held that permissive intervention is appropriately used by a litigant who, while not an original party to an action, challenges a protective or confidentiality order that was entered in that action because it impedes access to judicial records. *Pansy*, 23 F.3d at 778. When the third party seeks to intervene for this purpose of accessing the main action's document, it meets the requirement of Fed. R.Civ.P. 24(b)(2) that its claim have "a question of law or fact in common" with

the main action. *Id.* District courts may entertain such motions to intervene "even after the underlying dispute between the parties has long been settled." *Id.* at 779 (quoting *Leucadia, Inc. v. Applied Extrusion Techs., Inc.,* 998 F.2d 157, 161 (3d Cir.1993)).

As a result, The Press has appropriately utilized permissive intervention to seek access to the judicial records of the *Jackson* action [1] and this Court will grant its motion to intervene.

## C. *"Judicial Records"*

▮▮▮ The existence of a common law right of access to judicial proceedings and judicial records is "beyond dispute." *Littlejohn v. Bic Corp.,* 851 F.2d 673, 677–78 (3d Cir.1988) (quoting *Publicker Indus., Inc. v. Cohen,* 733 F.2d 1059, 1066 (3d Cir.1984)). Because The Press has sought access to the settlement agreement under this common law right of access, the threshold issue in this case is whether the settlement agreement is a "judicial record." [2]

Involved in this action are three separate items: (1) the settlement agreement rough-drafted by the parties on June 12, 2002 and referred to on the Court record;

(2) the Court record of the June 12, 2002 proceeding when the parties, under oath, indicated their understanding of the terms of settlement and their agreement to them; and (3) the actual settlement agreement entered into by the parties. After considering the law of the Third Circuit on this matter, this Court finds that the drafted settlement agreement and the Court record are "judicial records," but that the actual settlement agreement is not, since it has never been presented to or filed by the Court.

The right of the public to inspect and copy judicial records antedates the Constitution. *United States v. Criden,* 648 F.2d 814, 819 (3d Cir.1981) (*"Criden I"*). Therefore, there is a "strong presumption" in favor of access to judicial records and proceedings in civil cases. *Rittenhouse,* 800 F.2d at 343. Access is more than the ability to attend open court proceedings; it is also the qualified right of the public to inspect and copy judicial records. *Criden I,* 648 F.2d at 819. Such a right promotes public confidence in the judicial system by allowing the public to see the quality and trustworthiness of justice dispensed by the court. *Littlejohn v. Bic Corp.,* 851 F.2d 673, 678 (3d Cir.1988).

---

1. The Press could have chosen to proceed by complaint instead, but it was not required to. *Pansy,* 23 F.3d at 778 n. 4.

2. The Press' papers in this case did not ground the access argument on the First Amendment. They probably could have done so. *See Bank of America v. Hotel Rittenhouse Assoc.,* 800 F.2d 339, 343 (3d Cir.1986). However, because the papers never mentioned the First Amendment by name, this Court will consider their right to access under the common law right of access as is detailed in *Pansy,* 23 F.3d at 780–83, a case argued at length by both The Press and the DRBA. (*See* Press 8/7/02 Br. at 3; DRBA 8/26/02 Br. at 1.)

   The Press did cite to *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108 (3d Cir.1986), stating that it was relying on its authority.

(Press 9/13/02 Br. at 2.) While the case includes reference to the First Amendment, The Press cited to its holding regarding the validity of a protective order. It is clear that no such order exists in this case.

The Press also cited its reliance on *Publicker Indus., Inc. v. Cohen,* 733 F.2d 1059 (3d Cir.1984). (Press 8/7/02 Br. at 4.) In *Publicker,* the Third Circuit decided the access issues based on both the right of access and the First Amendment. As a result, this Court cannot assume from the citation alone that The Press was asserting First Amendment issues in its papers.

In any event, each of these cases relates to the right of access to judicial records, and not to the press' right of access to other documents held by a party to litigation.

The strong presumption in favor of access is fully applicable to transcripts of a civil trial and exhibits admitted at trial, *Littlejohn,* 851 F.2d at 678–80, to transcripts of a preliminary injunction hearing, *Publicker,* 733 F.2d at 1066–67, and to documents filed with the Court on nondiscovery motions, *Leucadia, Inc. v. Applied Extrusion Techs. Inc.,* 998 F.2d 157, 165 (3d Cir.1993).

■ Here, therefore, this Court finds that a transcript [3] of the settlement hearing testimony held on the record on June 12, 2002, in which the parties stated their understanding of the agreement, and the settlement draft that was made part of the Court's file and was referred to on the record, are "judicial records" that enjoy the presumption in favor of access.

The actual settlement agreement which the parties eventually prepared among themselves, on the other hand, is not a "judicial record" that this Court can provide access to by way of a simple intervention motion. A settlement agreement is not a judicial record when it is not filed with the court, interpreted by the court, or enforced by the court. *Pansy,* 23 F.3d at 781. The agreement is not a judicial record even if the court places an order of confidentiality over it or reviews its terms. *Id.* at 782–83.

Here, it is undisputed that this Court never filed, interpreted, or enforced the eventual formal written settlement agreement. No tenet of law required the settlement agreement to be filed with the court,

and it was not. This Court has never seen the final document or read its terms. As a result, the actual settlement agreement is not a "judicial record" and The Press cannot seek access to it in this Court under the right of access doctrine.

Therefore, The Press can only seek access from this Court for the disclosure of the June 12, 2002 transcript and the June 12, 2002 rough draft agreement.

### D. *Access to Judicial Records*

The right of access is not absolute. While a presumption of openness attaches to the discovery of "judicial records," it must be balanced against the factors that weigh against access. *Leucadia,* 998 F.2d at 165. The burden is on the party who seeks to overcome the presumption of access to show that the interest in secrecy outweighs the presumption. *Id.* (citing *Bank of America,* 800 F.2d at 344).

Access is generally not permitted for internal documents of administrative agencies, for state judicial discipline proceedings, for documents which include trade secrets, or for material that is impermissibly injurious to third parties. *Miller v. Indiana Hosp.,* 16 F.3d 549, 551 (3d Cir. 1994) (citations omitted). In "ordinary civil litigation," however, closing judicial documents to the public is a very "unusual step." [4] *Id.*

Here, this Court finds that The Press is allowed to access the judicial records. The DRBA has not offered any persuasive rea-

---

**3.** The settlement hearing of June 12, 2002 has not yet been transcribed, but, like almost any hearing, can be ordered and prepared at the request, and at the expense, of a party or a member of the public. Since the Intervenor has indicated that is seeks such a transcript, this opinion assumes that the Intervenor seeks that such a transcript be prepared.

**4.** If a confidentiality order had been entered, this Court would need to balance the need for

the information against the harm that could be caused by disclosure of it to determine whether "good cause" exists for the protective order. *Pansy,* 23 F.3d at 786–87. Here, there is no protective order over the settlement draft or the June 12, 2002 court proceeding, but it is undisputed that the parties mutually anticipated the continuing confidentiality of their settlement agreement, and it is fair to apply the *Pansy* standard here as if such order had been formally entered.

son why confidentiality outweighs the presumption of the right of access. It has argued that the settlement agreement itself includes a confidentiality provision. However, the agreement is not part of the record and is not binding on this Court in this action.[5] This Court does acknowledge that, while there was never a confidentiality order placed over the record, the proceedings were undertaken with the assumption that they would be confidential, consistent with the parties' expectations. This Court understood that the terms of the agreement on June 12th should be confidential pending final approval by the DRBA and final drafting of a mutually agreeable settlement instrument by all counsel, which would take some time. However, the reasons for such confidentiality related to the structure of the DRBA and its need for agency-wide approval. Such approval has been obtained, so this reason no longer provides support for restricting access to the judicial records.

The DRBA's own "Freedom of Information" regulations support a finding of access in this case. As a public agency, it has declared that its policy is to perform "public business ... in an open and public manner so that the citizens of Delaware and New Jersey shall have the opportunity to observe the performance of the Authority." (Press 9/13/02 Br., Ex. B at 1.) "Public business" is defined as "all matters which relate in any way, directly or indirectly, to the performance of the Authority's functions or the conduct of its business." (*Id.* at 1–2.) While the DRBA exempts certain confidential matters from disclosure in its regulations, its primary focus recognizes the public nature of its work. The records in this case relate to

the very public business of how the DRBA treats its employees, handles its finances, and settles its lawsuits.

That the settlement agreement involved a public agency does not itself require disclosure. Conceivably, if the publication of the settlement would frustrate an ongoing investigation or unduly embarrass innocent individuals, or if the plaintiff employees opposed disclosure for such reasons, then the public interest in access to the settlement record might yield to other strong interests, public or private. DRBA has not made this Court aware of any such circumstances.

Therefore, this Court will allow The Press to intervene to the extent that it seeks access the settlement agreement rough draft and the June 12, 2002 transcript, and will grant such access.

### E. Access to Final Settlement Agreement under Freedom of Information Regulations

■ This Court will not consider, in the context of an intervention motion, a claim of access to the formal, final, written settlement agreement under the DRBA's Freedom of Information Regulations, (Press 9/13/02 Br. at Ex. B.), under the New Jersey Right to Know Law, N.J.S.A. 47:1A–1, et seq., or under the First Amendment because this Court's jurisdiction over such claims is not clear from the parties' papers. The Press has submitted no complaint in intervention to invoke a jurisdictional basis for its dispute with the DRBA, or to state a cause of action under applicable federal or state law. Because The Press is present only upon a motion for permissive intervention under Rule 24(b), *supra,* a federal court will not ordinarily permit an intervenor to launch a

---

5. A confidentiality provision in a settlement agreement may only be enforced in a separate contract action. *Pansy,* 23 F.3d at 788. In such an action, the court would need to de-

cide whether the provision is enforceable considering public records disclosure statutes, such as the New Jersey Right to Know Law, N.J.S.A. 47:1A–1. *Id.* at 789 n. 21.

new claim that has no question of law or fact in common with the main action. Here, although The Press seeks documents related to the resolution of this case, its application to compel the DRBA to turn over such documents fails to satisfy Rule 24(b)'s requirement that "an applicant's claim or defense and the main action have a question of law or fact in common." There was no claim or defense in the underlying case about access to documents in the possession of the DRBA.

Moreover, even if The Press' intervention motion were itself a new civil complaint against the DRBA, which it is not, the subject matter jurisdiction is unpleaded and unclear. Federal courts are courts of limited jurisdiction that may only hear a case if the constitution or a federal statute provides the court with jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Title 28 of the United States Code contains the statutory bases of subject matter jurisdiction. The three types that are most often utilized to provide federal court review are: (1) federal question jurisdiction pursuant to 28 U.S.C. § 1331, (2) diversity jurisdiction pursuant to 28 U.S.C. § 1332, and (3) ancillary, or supplemental, jurisdiction pursuant to 28 U.S.C. § 1367.

Federal question jurisdiction allows the court to have original jurisdiction over any civil action that arises under the constitution, a federal law, or a federal treaty. 28 U.S.C. § 1331. Diversity jurisdiction provides the court with original jurisdiction over any civil action where the amount in controversy exceeds $75,000 and is between citizens of different states, between citizens of a state and citizens of a foreign state, or between a foreign state and citizens of a state. 28 U.S.C. § 1332. Ancillary jurisdiction provides the court with jurisdiction over matters that have no other statutory basis of jurisdiction, but are

so related to a claim in an action that is already properly before the court that (1) the claims are, in varying respects and degrees, factually interdependent, or (2) the additional claim must be heard so the court can function successfully with authority to manage its proceedings, vindicate its authority, and effectuate its decrees. *Kokkonen,* 511 U.S. at 379–80, 114 S.Ct. 1673 (citations omitted).

Here, The Press filed a motion to intervene pursuant to Fed.R.Civ.P. 24(b), a motion that does not require a statement of this Court's jurisdiction. However, this Court must have a separate and independent ground of subject matter jurisdiction over every claim that it hears. The papers in this matter are simply not clear as to whether there is subject matter jurisdiction over the Press' claims.

The motion to intervene is silent as to jurisdiction. The subsequent papers do not raise jurisdiction as an issue or deal with it in any manner. At oral argument on September 20, 2002, The Press indicated that jurisdiction could be found in three ways: (1) because the Freedom of Information regulations were promulgated by the DRBA which is established pursuant to a federal compact, questions regarding the regulations should be federal questions; (2) because the DRBA is an agency that spans New Jersey and Delaware, The Press is diverse from the Delaware portion of the agency; and (3) because the issue regards access rights of the press, it involves the First Amendment, and The Press would claim that DRBA's withholding of the documents amounts to state action abridging free speech.

This Court finds that the proper forum to debate these issues of jurisdiction is by filing a new civil action that indicates its basis of jurisdiction. Jurisdiction may turn out to be proper in federal court or in state court, but this motion, completed without any briefing, preparation, or in-

formed argument on the subject, should not decide such an issue.

It does seem clear that any claim between a state press and a state agency that relates to the state's Right to Know Act or to the agency's regulations is a state matter that does not arise under federal law. It also seems clear that the parties to any action between The Press and the DRBA are not diverse because they are both citizens of New Jersey. Ancillary jurisdiction over the claim does not apply here because the right of access to a settlement agreement is completely distinct, independent, and collateral to the underlying workplace discrimination claims in the underlying action. The question of jurisdiction, however, is not as clear as it appears at first blush because of the arguments made about jurisdiction due to the agency's creation as a federal compact, the agency's dual-state status, and the First Amendment.

Were the claim based on the First Amendment, federal question jurisdiction likely would be proper. However, here, the parties never even wrote the words "First Amendment" in their moving papers. The parties also did not present any argument as to how the DRBA's status as a federal compact agency, created under the Constitution's Compact Clause, Art. I, § 10, cl. 3, provides this Court with a jurisdictional basis. The Press cited just four cases in its briefs, relying mainly on *Pansy v. Stroudsburg*, 23 F.3d 772 (3d Cir.1994), and *Leucadia v. Applied Extrusion Techs., Inc.*, 998 F.2d 157 (3d Cir. 1993), two cases that do not include First Amendment analysis. *See Pansy*, 23 F.3d at 792 n. 31; *Leucadia*, 998 F.2d at 161.

The Press also stated its reliance on *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108 (3d Cir.1986), a case that considers the validity of a protective order under the First Amendment though none exists here, (Press 9/13/02 Br. at 2), and on *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059 (3d Cir.1984), a case decided under both the common law right of access to judicial documents and the First Amendment, (Press 8/7/02 Br. at 4.). As a result, this Court cannot assume from the caselaw cited that The Press was asserting First Amendment issues against the DRBA, nor that the bi-state nature of the DRBA has jurisdictional significance. If it wishes to assert rights under the First Amendment, it will have the opportunity to do so explicitly in an appropriate forum.

As a result, this Court, in the context of the intervention motion unaided by a complaint in intervention, will not decide The Press' claim of access to the final settlement agreement in the records of the DRBA on First Amendment or state law grounds. Instead, this Court will deny the motion to intervene in part as it pertains to disclosure of the actual settlement agreement in the DRBA's records without prejudice to The Press' seeking access to the agreement by filing a complaint against DRBA that asserts proper jurisdiction and a cognizable cause of action in either this Court or a state court.

## III. CONCLUSION

For the foregoing reasons, this Court grants The Press' motion to intervene in part as it pertains to the settlement agreement rough draft and the June 12, 2002 transcript[6] and denies it in part, without

---

**6.** Accordingly, the transcript will be prepared by the Court Reporter and furnished forthwith to counsel for DRBA under seal, since counsel has not had an opportunity to review same. Assuming that the transcript record is as described herein, the DRBA will have seven (7) calendar days after receipt of the transcript in which to file any motion for stay of disclosure pending appeal or reconsideration with the Clerk of Court. If no such motion is filed, the transcript of June 12, 2002 and the rough draft settlement memorandum shall be

prejudice, as it pertains to the final settlement agreement in the records of DRBA. The appropriate Order is attached.

### ORDER

For the reasons expressed in the Opinion filed herewith,

**IT IS** this day of September, 2002 hereby

**ORDERED** that The Press of Atlantic City's application to intervene be, and hereby is, *GRANTED IN PART* as it pertains to this Court's judicial records, namely, the rough draft settlement agreement and the transcript of the June 12, 2002 court proceeding;

**IT IS FURTHER ORDERED** that the official Court Reporter shall prepare a transcript of the settlement hearing of June 12, 2002 and furnish same under seal to counsel for the DRBA, Robert Partlow, Esq., who shall have seven (7) calendar days from receipt to file any application with the Clerk of Court for a stay of this Order, and failing same, the Court shall provide a copy of the said transcript and of the rough-draft memorandum of settlement of June 12, 2002, to counsel for The Press of Atlantic City, Nelson C. Johnson, Esquire, and the transcript may be unsealed in the records of the Court; and

**IT IS FURTHER ORDERED** that The Press of Atlantic City's application to intervene be, and hereby is, *DENIED IN PART* as it pertains to disclosure by the DRBA of the final settlement agreement *WITHOUT PREJUDICE* to filing a civil action in a court of proper jurisdiction.

unsealed and provided to counsel for The Press.