MEMORANDUM AND ORDER
 

 LIFLAND, District Judge.
 

 Intervenor IPD Analytics, LLC (“IPDA”) appeals the September 29, 2003 decision of Magistrate Judge Falk denying IPDA’s application to modify a blanket protective order and unseal numerous documents filed pursuant to that order. Plaintiffs Pfizer Inc., Warner-Lambert Co., and Godecke Aktiengesellschaft (collectively, “Warner-Lambert”) oppose IPDA’s appeal on the merits and move to dismiss the appeal as procedurally defective. Defendants Purepac Pharmaceutical Co., Faulding Inc., Apotex Corp., Apotex, Inc., Torpharm Inc., Teva Pharmaceuticals U.S.A., Teva Pharmaceutical Industries, Ltd., Zenith Laboratories, Inc., Zenith Goldline Pharmaceuticals, Inc., Ivax Corporation, Eon Labs Manufacturing, Inc., Geneva Pharmaceuticals, Inc., Ranbaxy Pharmaceuticals, Inc., Ranbaxy Holdings (UK) Limited, Ranbaxy Laboratories Limited, Pharmaceutical Holdings Corp., United Research Laboratories, Inc., and Mutual Pharmaceutical Company (collectively, “Generic Defendants”)
 
 [1]
 
 also oppose IPDA’s appeal.
 

 BACKGROUND
 

 This multi-district patent litigation arises out of the Generic Defendants’ alleged infringement of Warner-Lambert’s Patent No. 6,054,482 (“ ’482 Patent”). The summary judgment documents to which IPDA seeks access were submitted by the parties pursuant to a detailed, stipulated protective order entered by then Magistrate Judge Chesler on May 17, 2001 (the “Protective Order”).
 
 [2]
 
 The Protective Or
 
 *DCXCIX
 
 der establishes two categories of protected information-“Outside-Counsel-Only Confidential Information,” for particularly sensitive information, and “Confidential Information”-and requires the parties to act in good faith when designating as confidential any trade secret or other confidential or proprietary research, development, or commercial information. (Protective Order ¶¶ 1,3). The Protective Order provides that the parties may file “[a]ny document or object” under seal by submitting it to the Clerk’s Office with a special cover sheet and that “[a]ny document or object submitted with such a cover sheet will be maintained under seal by the Clerk’s Office.”
 
 (Id.
 
 ¶ 9). Pursuant to the terms of the Protective Order, Defendants have filed summary judgment motions, briefs, declarations, and supporting documents, totaling over 7,700 pages. The briefs discuss the development work of Warner-Lambert and the Generic Defendants leading to their respective formulations, analytical testing, the chemical composition of the generic drugs, and the Abbreviated New Drug Applications (“ANDAs”) for the generic drugs. (Francis Cert. ¶ 2).
 

 IPDA is a company that provides research and analysis to the investment community on patent-related issues. (Krass Aff. ¶ 2). The clients of IPDA, many of whom are shareholders of one or more of the parties to this action, consist entirely of mutual funds and hedge funds.
 
 (Id.).
 
 IPDA prepares reports about significant patent litigation, based on which its clients can make more informed investment choices about the securities of the entities involved.
 
 (Id.
 
 ¶ 3). Those reports include predictions concerning the outcome of patent litigation. This being a significant patent litigation, IPDA seeks access to the documents submitted in connection with the pending summary judgment motions.
 

 PROCEDURAL HISTORY
 

 On June 12, 2003, IPDA applied for an Order to Show Cause allowing it to intervene in this matter in order to gain access to sealed summary judgment papers. This Court denied IPDA’s application, but permitted IPDA to file a motion to be handled in due course. The Court subsequently designated Judge Falk to rule upon the motion.
 

 Judge Falk heard oral argument on September 29, 2003. Ruling from the bench, Judge Falk granted IPDA’s motion to intervene for the limited purpose of challenging the Protective Order and
 

 denied IPDA’s application to modify the blanket Protective Order;
 

 found, based on an
 
 in camera
 
 review, that the sealed summary judgment papers consisted almost entirely of protect-able information;
 

 granted IPDA access to redacted versions of the sealed summary judgment papers, to be paid for by IPDA;
 

 denied IPDA’s request for an articulation as to or a sampling of the portions
 
 *DCC
 
 of the papers found to constitute information protectable from disclosure; and denied IPDA’s request to allow its counsel to review the sealed summary judgment papers or a sampling of same on an “attorney’s eyes only basis.”
 

 IPDA seeks review of Judge Falk’s decision, except for his granting it intervenor status for the purpose of challenging the Protective Order.
 

 WARNER-LAMBERT’S MOTION TO DISMISS IPDA’S APPEAL
 

 Warner-Lambert argues that IPDA’s appeal is proeedurally defective because there is no order memorializing Judge Falk’s decision from which to appeal. In support of that argument, Warner-Lambert relies on 28 U.S.C. § 636(b)(1)(A), which provides that the court “may reconsider any pretrial matter ... where it has been shown that the magistrate judge’s order is clearly erroneous or contrary to law” and like references to an “order” in Local Civil Rule 72.1(c)(1), governing appeals from a magistrate’s determination of non-dispositive matters. IPDA responds that the court rules do not contemplate such a rigid application. IPDA’s counsel also represents, by way of certification, that Judge Falk’s chambers advised that no “order” other than the September 29th ruling was necessary or would issue. (Weeks Cert. ¶ 2).
 

 To resolve this matter the Court need go no further than the Advisory Committee Notes to Federal Rule of Civil Procedure 72, which implements § 636(b)(1)(A): “The rule calls for a written order of the magistrate’s disposition to preserve the record and facilitate review. An oral order read into the record by the magistrate will satisfy this requirement.”
 
 Fed. R.Civ.P.
 
 72;
 
 see also
 
 12 Wright et al.,
 
 Federal Practice and Procedure
 
 § 3069 & n.7 (1997). Judge Falk’s decision is clearly reflected in the transcript of the proceedings and the docketed minute entry of same. (Docket No. 00-2931, # 188, 9/29/03, Minute Entry). Thus, a written order is not necessary to preserve review. The Court accordingly will deny Warner-Lambert’s Motion to Dismiss IPDA’s appeal.
 

 IPDA’S MOTION FOR EXPEDITED
 
 REVIEW
 
 [3]
 

 AND DE NOVO RECONSIDERATION OF MAGISTRATE JUDGE FALK’S DECISION DENYING THE MOTION OF IPDA FOR MODIFICATION OF THE PROTECTIVE ORDER AND UNSEALING OF THE SUMMARY JUDGMENT PAPERS
 

 On September 29, 2003, Judge Falk ruled that the subject summary judgment papers should remain under seal as “almost all of the information in the filings is ... legitimate trade secret information.” (Tr. 75:11-16). Such information includes the parties’ products, research and development, processes, secret chemical formulas, [and] the parties’ suppliers.” (Tr. 61:1-6). IPDA asks this Court to reconsider and reverse Judge Falk’s decision on the grounds that it (1) constitutes a serious infringement of First Amendment and common law rights of access to judicial records, warranting independent
 
 de novo
 
 review and (2) is otherwise clearly erroneous and contrary to law. Warner-Lambert and the Generic Defendants respond that Judge Falk properly determined that the parties had demonstrated that the summary judgment documents should remain under seal because the presumption
 
 *DCCI
 
 of access to judicial records may be outweighed by trade secret interests.
 

 MAGISTRATE’S DECISION
 

 Applying the standard set forth in
 
 Pansy v. Borough of Stroudsburg,
 
 23 F.3d 772 (3d Cir.1994), namely, that a party seeking a protective order “must establish good cause” to justify such an order, Judge Falk determined that the Protective Order was properly entered. In reaching that conclusion, Judge Falk noted that the Order cited
 
 Pansy
 
 and specifically referred to protected materials “contain[ing] any trade secret or other confidential or proprietary research, development, or commercial information.” (Tr. 56). Judge Falk further explained that
 

 in the context of this highly technical, genuinely complex, multi-district, Hatch/Waxman patent litigation, this description of protected information is almost tantamount to a specific finding of good cause.
 

 Issues in patent cases of this type are, by definition, secret. They implicate classic trade secrets. Secret formulas, the disclosure of which could result in millions or even billions of dollars being lost. Cases like this are what confidentiality orders are designed for.
 

 (Tr. 56-57). Judge Falk also noted that, unlike most reported cases on protective orders, “[tjhere really is no question about the trade secret, proprietary status of the information in this case.” (Tr. 57). Judge Falk described his impressions of the contents of the sealed documents as follows:
 

 I’ve pre-tried the case. I’ve carefully reviewed the sealed materials and the pretrials, which is much [the] same as in the summary judgment motions. I have also reviewed the briefs and summary judgment motions in-camera ... [T]he entire summary judgment briefs and documents consist almost entirely of a detailed analysis of the parties’ clearly protectable and highly confidential trade secrets. These include the parties’ products, research and development, processes, secret chemical formulas, the parties’ suppliers. Almost all of the material that I reviewed under seal constitutes trade secrets, as that term is broadly defined.
 

 (Tr. 60-61). In reaching that determination, Judge Falk relied on the Restatement definition of trade secret as “any formula, pattern, device, or compilation of information which is used in one’s business and which gives him an opportunity to obtain an advantage over competition who do not know or use it.” (Tr. 61) (citing
 
 Rohm and Haas Co. v. Adco Chem. Co.,
 
 689 F.2d 424 (3d Cir.1982)).
 

 Turning to the submissions of the parties, Judge Falk explained that
 

 [e]aeh of the parties has submitted detailed affidavits, declarations, setting forth in detail the nature of their trade secrets and the specific harm that will be suffered upon disclosure. Some have submitted summaries of trade secrets, which I have carefully reviewed. These documents are part of the record, and I will not review all of them here, although some were listed by counsel in argument.
 
 [4]
 

 (Tr. 61:24-62:6). Selecting at random the declaration of Brendan Magrab, Vice President, Intellectual Property for Purepac, Judge Falk quoted the following:
 

 Purepac has maintained information about its Gabapentin capsules and tablets as trade secrets.
 

 
 *DCCII
 
 Purepac keeps information relating to these Gabapentin products in a secured facility.
 

 Furthermore, Purepac’s capsule and tablet AND As are non-public, confidential documents, and federal law forbids their disclosure. The FDA is specifically prohibited from disclosing Purepac’s capsule and tablet ANDAs, including all data or information submitted with or incorporated by reference....
 

 The pharmaceutical industry, particularly the generic drug segment, is highly competitive. If information about the formulation, manufacture, or testing of Purepac’s Gabapentin capsules and tablets became known in the pharmaceutical industry, others would gain a competitive advantage, and Purepac would suffer serious commercial injury. A competitor could use Purepac’s proprietary information to produce competing products, with little or no research or development work, which would place Purepac at a significant competitive disadvantage.
 

 In addition, information regarding raw material suppliers is also kept as a trade secret. This is so because there is the danger that if a competitor knew a supplier’s identity, the competitor could outbid Purepac or otherwise jeopardize Purepac’s suppliers of raw materials.
 

 The composition statements being referred to [in the summary judgment materials] provide a recipe for making the products. Purepac would suffer serious commercial injury if the information became known to others.
 

 (Tr. 63:3-64:25) (alteration added). Based on the certifications submitted and his own
 
 in camera
 
 review of the documents, Judge Falk made “the specific finding that each of the parties has made a specific showing of the harm that would be caused by disclosure of [the] summary judgment papers, and have demonstrated good cause under the applicable case law for confidentiality.” (Tr. 65). He concluded that “disclosure would seriously compromise the parties’ position in the marketplace” and that “[t]he harm as to all parties in the case is real and cognizable.”
 
 (Id.)
 
 Finding no reason to modify the Protective Order, Judge Falk denied IPDA’s motion in that respect.
 

 As to IPDA gaining access to redacted briefs, Judge Falk commented that redacted briefs would be “essentially useless” because the summary judgment papers consisted almost entirely of highly confidential trade secrets. (Tr. 69). He further recognized the complexity of redaction given not only the “voluminous nature” of the summary judgment filings, but the “interrelated” aspects of the Generic Defendants’ positions. Weighing the “difficult, time-consuming and expensive” nature of the redaction process against the “little resulting benefit,” Judge Falk concluded that IPDA, as the only entity that would arguably benefit from the redaction process, should pay for the redaction. (Tr. 69). Judge Falk considered it unfair to retroactively impose the burdens of redaction on the parties, noting that IPDA’s application comes three years into this litigation and that the parties have operated under the Protective Order since 2001. (Tr. 70). He summarized IPDA’s involvement in this case as follows:
 

 You have a situation where you have a private, for-profit entity, IPDA, coming late in the game, seeking access which will require an extraordinarily difficult, time-consuming, and expensive redaction, with questionable benefit to IPDA-although I’m not sure it’s for me to decide what they will find or it will find beneficial-and absolutely no benefit to the parties, and where IPDA seeks this
 
 *DCCIII
 
 information to profit on this information, while causing enormous-expense to the parties, I find that to be unacceptable, unjustifiable, and inappropriate; and, under the circumstances, the equities, logic, and fairness require that IPDA be required to pay for the redaction.
 

 (Tr. 72).
 

 Finally, Judge Falk denied IPDA’s application for more specific findings about representative documents and declined to allow IPDA counsel, based on a sampling procedure, to “review the redacted material, as counsel, for attorneys’ eyes only,” absent agreement by the Parties. (Tr. 79).
 

 STANDARD OF REVIEW
 

 A district court may refer certain non-dispositive pretrial matters to a magistrate judge for resolution. 28 U.S.C. § 636(b)(1);
 
 Fed.R.Civ.P.
 
 72(a); L.
 
 Civ. R.
 
 72.1(a)(1). A district court may reconsider and reverse any pretrial matter referred to a magistrate judge “where it has been shown that the magistrate’s order is clearly erroneous or contrary to law.” 28 U.S.C. § 636(b)(1)(A);
 
 Fed.R.Civ.P.
 
 72(a);
 
 L. Civ. R.
 
 72.1(c)(1)(A). “The district court is bound by the clearly erroneous rule in findings of facts; the phrase ‘contrary to law” indicates plenary review as to matters of law.”
 
 Haines v. Liggett Group, Inc.,
 
 975 F.2d 81, 91 (3d Cir.1992). A finding is clearly erroneous “when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.”
 
 Cooper Hosp./Univ. Med. Center v. Sullivan,
 
 183 F.R.D. 119, 127 (D.N.J.1998).
 

 The foregoing standard of review applies when a district court reviews a non-dispos-itive matter under § 636(b)(1)(A). The standard is different when it considers the “proposed findings and recommendations” in a § 636(b)(1)(B) dispositive matter.
 
 Haines,
 
 975 F.2d at 91. Under (b)(1)(A), the district court is bound by the clearly erroneous rule in reviewing questions of fact, and it is not permitted to receive further evidence.
 
 Id.
 
 Under (b)(1)(B), in contrast, the district court is permitted to make a
 
 de novo
 
 determination after proposed findings and recommendations and “may also receive further evidence.”
 
 Id.
 
 (citing 28 U.S.C. § 636(b)(1)(B) and
 
 Fed. R.Civ.P.
 
 72(b)). Some courts have applied a third standard-abuse of discretion-when reviewing matters within the discretion of a magistrate judge, such as discovery orders.
 
 Cooper Hosp.,
 
 183 F.R.D. at 127.
 

 The threshold question in this case is whether, for purposes of this Court’s review, Judge Falk’s decision on IPDA’s motion to modify the Protective Order and unseal documents is dispositive or non-dispositive. Courts have distinguished the standard of review applicable to a motion to intervene from review of the merits of an intervenor’s substantive claim.
 
 See, e.g., United States v. Certain Real Property and Premises Known as 1344 Ridge Road,
 
 751 F.Supp. 1060, 1061 (E.D.N.Y.1989). A ruling on a motion to intervene is typically treated as non-dispositive, whereas a determination on the merits of the substantive claims of an intervenor is dis-positive.
 
 Id.; see also United States v. W.R. Grace & Co.-Conn.,
 
 185 F.R.D. 184, 187 (D.N.J.1999) (“Although the Court of Appeals for the Third Circuit has apparently not ruled on this issue, the Court notes that it is common practice in this district for a magistrate judge to hear and determine a motion to intervene (a non-dispositive, pretrial motion) in accordance with Local R. 72.1(a)(1) ....”). This case is slightly different, given that IPDA is not becoming a party to this litigation in the fullest sense; its participation as an inter-venor is limited solely to challenging the Protective Order for purposes of gaining
 
 *DCCIV
 
 access to the summary judgment documents. A discovery order is typically treated as non-dispositive because it is “not dispositive of a claim or defense of a party” as contemplated by Fed.R.Civ.P. 72(a).
 
 Haines,
 
 975 F.2d at 92. Here, IPDA’s substantive claim is in the nature of a non-dispositive discovery dispute unrelated to claims in the underlying action.
 

 IPDA, itself, has taken conflicting positions on the issue of whether this matter is dispositive or non-dispositive. IPDA initially treated this matter on appeal as non-dispositive, “assum[ing] exercise of § 636(b)(1)(A) jurisdiction.” (IPDA Mem. Mot. Expedited Review and
 
 De Novo
 
 Reconsideration of Magistrate’s Decision at 5 n.7). Then, in its reply papers, IPDA advanced the argument that Judge Falk’s determination was the “functional equivalent” of an order dismissing its claims without IPDA’s consent, which, under § 636(b)(1)(B), is a dispositive matter that can only be made in the form of a recommendation to this Court. IPDA has arguably waived this argument by not raising it earlier in the proceedings, but, in light of the jurisdictional implications, the Court will nevertheless address it.
 

 IPDA relies on
 
 In re U.S. Healthcare,
 
 159 F.3d 142, 145 (3d Cir.1998), wherein the Third Circuit issued a writ of mandamus to a magistrate judge reversing the court’s order remanding a removed case back to state court. Reasoning that the remand order “banishe[d] the entire case from the federal court,” the Court held it to be dispositive for purposes of § 636(b)(1).
 
 Id.
 
 at 146.
 

 This case is distinguishable from
 
 U.S. Healthcare.
 
 Judge Falk’s determination did not “banish” IPDA’s case from federal court. Nor is Judge Falk’s decision the “functional equivalent” of a dismissal as to IPDA’s claim, particularly given the fact that IPDA was granted intervenor status and permitted access to redacted versions of the summary judgment papers. While it is true that Judge Falk’s decision was in effect “dispositive” of IPDA’s claim, that claim is precisely the type of non-disposi-tive discovery dispute falling within the domain of magistrate judges. Absent any controlling authority to the contrary, this Court will treat the matter as non-disposi-tive under § 636(b)(1)(A) and apply the clearly erroneous/contrary to law standard of review. Importantly, however, the Court would not reach a different result were it to treat this matter as dispositive under § 636(b)(1)(B) and
 
 Fed.R.Civ.P.
 
 72(b), permitting
 
 de novo
 
 review of a magistrate’s proposed findings and recommendations.
 

 Next, the Court must determine the standard of review for the individual issues raised on appeal. IPDA urges that this Court should conduct a
 
 de novo
 
 review of the entire record in this case because its motion implicates the First Amendment right of access. The argument goes that the First Amendment provides a right of access to non-discovery civil proceedings,
 
 Publicker Indus. v. Cohen,
 
 733 F.2d 1059, 1066-71 (3d Cir.1984), and the Third Circuit has extended the presumption of openness to summary judgment motions,
 
 Republic of the Philippines v. Westinghouse Elec. Corp.,
 
 949 F.2d 653, 660-62 (3d Cir.1991). Given that appellate review of factual findings in the First Amendment context is broader than that for abuse of discretion,
 
 United States v. Smith,
 
 123 F.3d 140, 146 (3d Cir.1997), IPDA urges this Court to conduct an “independent review of the evidence of the dispositive constitutional issue,”
 
 Bose Corp. v. Consumers Union of the United States, Inc.,
 
 466 U.S. 485, 499, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984).
 

 The Court declines IPDA’s invitation to abandon any and all deference to Judge
 
 *DCCV
 
 Falk’s decision and, as already indicated, will examine whether that decision was clearly erroneous or contrary to law. § 636(b)(1)(A);
 
 Haines,
 
 975 F.2d at 91. Notably, though, that standard is not inconsistent with conducting an independent review of the record where First Amendment issues are concerned.
 
 See Bose Corp.,
 
 466 U.S. at 499-500, 104 S.Ct. 1949 (explaining that clearly erroneous rule is not inconsistent with obligation to make independent review of record in cases raising First Amendment issues). IPDA’s First Amendment argument is essentially that Judge Falk erred as a matter of law in failing to recognize the status of the materials as judicial records to which the First Amendment right of access attaches. Judge Falk’s legal determinations in that regard are subject to
 
 de novo
 
 review.
 
 See
 
 28 U.S.C. § 636(b)(1)(A);
 
 Pansy,
 
 23 F.3d at 781. Similarly, a court’s interpretation and application of the legal standard for granting or modifying a protective order is subject to
 
 de novo
 
 review.
 
 Pansy,
 
 23 F.3d at 783-84.
 

 ANALYSIS
 

 The Court begins by noting that IPDA got what it asked for-access to summary judgment papers redacted of trade secret information. (Tr. 18-19 “[W]e don’t want your trade secrets, redact your documents of trade secrets and we’ll be happy to accept the documents in redacted form.... [A]ll we want is the documents in redacted form.”). IPDA nevertheless appeals Judge Falk’s decision on numerous bases, to which the Court now turns.
 

 IPDA challenges Judge Falk’s decision on the grounds that the court erred as a matter of law in failing to recognize that the subject materials constitute judicial records, to which the strong presumption of access attaches; that the court’s finding of “good cause” to support sealing of summary judgment papers was clearly erroneous; that the court’s finding that nearly all of the summary judgment papers contained trade secrets was clearly erroneous; and that burdening IPDA with costs of redaction unconstitutionally infringes IPDA’s and the public’s First Amendment rights and is otherwise inequitable. The Court will address each of these arguments in turn.
 

 A. Presumptive Right of Access to Judicial Records
 

 There is a presumptive common law right of public access to all material filed in connection with non-discovery pretrial motions, including summary judgment motions.
 
 Westinghouse,
 
 949 F.2d at 660-62. The Third Circuit has also recognized that the First Amendment, independent of the common law, protects the public right of access to records of civil proceedings.
 
 Id.
 
 at 659 (citing
 
 Publicker,
 
 733 F.2d at 1070).
 
 But see In re Cendant Corp.,
 
 260 F.3d 183, 198 n. 13 (3d Cir.2001) (noting that parameters of First Amendment right of access are as of yet undefined).
 
 [5]
 
 Significantly, the right of access to judicial rec
 
 *DCCVI
 
 ords is not absolute.
 
 Leucadia, Inc. v. Applied Extrusion Technologies, Inc.,
 
 998 F.2d 157, 165 (3d Cir.1993);
 
 Joint Stock Soc’y v. UDV N. Am., Inc.,
 
 104 F.Supp.2d 390, 395-96 (D.Del.2000). The presumption of access is subject to a balancing of factors that militate against access,
 
 e.g.,
 
 the interest in secrecy.
 
 Leucadia,
 
 998 F.2d at 166. It is the burden of the party seeking to overcome the presumption of access to demonstrate the need to keep the materials under seal.
 
 See, e.g., Leucadia,
 
 998 F.2d at 167 (citing
 
 Westinghouse,
 
 949 F.2d at 663);
 
 Bank of America,
 
 800 F.2d at 346. Specifically, that party must demonstrate that the material contains the type of information that courts will protect and that there is good cause for continued application of an existing order,
 
 Publicker,
 
 733 F.2d at 1070-71 (citing
 
 Zenith Radio Corp. v. Matsushita Elec. Indus. Corp.,
 
 529 F.Supp. 866, 890 (E.D.Pa.1984)). Good cause is established if there is a showing that disclosure will result in a clearly defined and serious injury to the party seeking to overcome the presumption of access.
 
 Id.
 
 at 1071. Judicial records are to remain sealed upon such a showing, even if the party seeking access has a First Amendment or common law right to access the materials. In short, the public right of access to judicial records does not trump all other interests and may be limited where there are important overriding interests.
 

 A well-settled exception to the right of access is the “protection of a party’s interest in confidential commercial information, such as a trade secret, where there is a sufficient threat of irreparable harm.”
 
 Id.
 
 The presence of trade secrets or other confidential information weighs against public access and, accordingly, documents containing such information may be protected from disclosure.
 
 Leucadia,
 
 998 F.2d at 165-66;
 
 see also Publicker,
 
 733 F.2d at 1073 (“[A]n interest in safeguarding a trade secret may overcome a presumption of openness.”) (citing
 
 Zenith,
 
 529 F.Supp. at 890). The Third Circuit has expressly recognized that “courts may deny access to judicial records ... where they are sources of business information that might harm a litigant’s competitive standing.”
 
 Westinghouse,
 
 949 F.2d at 662 (quoting
 
 Littlejohn v. BIC Corp.,
 
 851 F.2d 673, 678 (3d Cir.1988)).
 

 IPDA argues that Judge Falk failed to recognize the status of the materials sought as judicial records, which conferred upon IPDA the presumption of access and requires the parties to overcome that showing with specific and particularized proof.
 
 [6]
 
 The Court disagrees. Judge Falk properly focused on whether Plaintiff and the Generic Defendants, as the parties seeking to protect the sealed judicial records, had specifically demonstrated the need to keep the materials under seal. While it is true that Judge Falk did not specifically reference “judicial records” in his analysis, nothing in the record suggests that he failed to treat the subject summary judgment papers as such. To the contrary, Judge Falk found a particularized
 
 *DCCVII
 
 showing of a need for continued secrecy sufficient to overcome the presumption of access:
 

 Each of the parties has submitted detailed affidavits, declarations, setting forth in detail the nature of their trade secrets and the specific harm that will be suffered upon disclosure. Some have submitted summaries of trade secrets, which I have carefully reviewed. These documents are part of the record ...
 

 (Tr. 67:11-18). Judge Falk went on to conclude that the presumption of openness was overcome:
 

 Based on the certifications submitted and based on my in-camera review of the documents and of the briefs and of the filings and the summaries of the trade secrets, I make the specific finding that
 
 each of the parties has made a specific showing of the harm that would be caused by disclosure of [the] summary judgment papers,
 
 and have demonstrated good cause under the applicable law for confidentiality.
 

 (Tr. 70:21-71:4 (emphasis added)).
 

 Next, IPDA argues that Judge Falk’s near “total rebanee” upon
 
 Pansy
 
 as controlling was reversible error. IPDA’s argument goes that the
 
 Pansy
 
 court held that the settlement agreement in question was not a judicial record and, therefore, proceeded “independent of the right of access doctrine” under a “good cause” analysis for modification of a protective order consistent with Federal Rule of Civil Procedure 26.
 
 Pansy,
 
 23 F.3d at 783. While IPDA is correct in noting that the settlement agreement in
 
 Pansy
 
 was found not to be a judicial record, IPDA overstates Judge Falk’s reliance on
 
 Pansy
 
 for two reasons. First, the “good cause” standard imposed by Federal Rule of Civil Procedure 26 effectively merges with right-of-access analysis in many respects.
 
 See Joint Stock Soc’y,
 
 104 F.Supp.2d at 395-96. Second, Judge Falk appropriately analyzed under
 
 Pansy
 
 whether good cause existed for continued protection of the papers. He acknowledged that
 
 Pansy
 
 is “quite distinguishable from the present case” (Tr. 59:9-11) and relied on it only as a guideline in determining whether the Protective Order was issued upon a showing of good cause, and if the Protective Order should be modified. There is no indication that Judge Falk incorrectly relied on
 
 Pansy
 
 or failed to recognize the effect of the right of access on the summary judgment materials. (Tr. 66:20-67:2). Thus, Judge Falk’s reliance on
 
 Pansy
 
 was not contrary to law.
 

 Next, IPDA argues that Judge Falk erred in placing the burden upon IPDA to demonstrate why it needed the summary judgment papers. (IPDA Br. at 22-24 (citing
 
 Bank of America,
 
 800 F.2d at 344;
 
 Leucadia,
 
 998 F.2d at 164,
 
 Westinghouse,
 
 949 F.2d at 662)). IPDA also contends that it was error for the court to balance its status as a profit-driven intervenor and to ignore the fact that public shareholders of Pfizer and Teva, among other parties, had a “public interest” in learning what arguments their counsel had advanced at the summary judgment stage. Here, again, IPDA’s arguments are unavailing. Judge Falk’s ultimate decision not to grant IPDA full access to the summary judgment papers is not tantamount to ignoring the right-of-access presumption. Rather, Judge Falk carefully assessed the continuing need for secrecy as articulated in the parties’ submissions and determined that those needs outweighed the presumption of access. At no time did Judge Falk place the burden on IPDA to justify why it desired access to the summary judgment papers. Nor did Judge Falk deny IPDA the presumption of access because it was a profit-driven intervenor. In fact, Judge Falk specifically noted that “while he
 
 *DCCVIII
 
 found an important distinction between a media outlet or prospective party seeking access and an entity seeking specific information in a highly technical case to use and profit from it, such distinction did not apply in the underlying law regarding access.” (Tr. 71:21-72:4). Contrary to IPDA’s arguments, Judge Falk carefully assessed the countervailing considerations to support denial of IPDA’s access to the summary judgment papers.
 
 Cf. Joint Stock Soc’y,
 
 104 F.Supp.2d at 395-96 (affirming special master’s finding that reporters’ rights under First Amendment were outweighed by defendants’ showing that disclosure of trade secrets would undercut position in marketplace).
 

 IPDA also argues that the fact that the parties filed summary judgment motions here indicates that the motions are supported by facts that would be admissible in evidence and subject to public disclosure.
 
 See
 
 Fed.R.Civ.P. 56(e). IPDA maintains that whatever utility the Protective Order served in facilitating discovery has been diminished by the filings of multiple summary judgnent motions. That argument is essentially cumulative of IPDA’s argument that it has a right of access to judicial records. It also misses the mark in that it does not address the well-recognized practice of submitting briefs or other documents containing confidential trade secret information under seal. The mere fact of admissibility in evidence is irrelevant to consideration of the right to confidentiality pursuant to a Protective Order.
 

 B. Good Cause
 

 Independent of the common law and First Amendment right of access, IPDA contends that the parties to this litigation have not sustained their burden of establishing that continued secrecy of the sealed materials is warranted under the Federal Rule of Civil Procedure 26(c)(7) “good cause” standard. Moreover, IPDA argues that Judge Falk erred in placing considerable reliance on the court’s institutional interest in facilitating discovery through umbrella protective orders. IPDA contends that the Protective Order is extraordinarily broad and notes that, by its own terms, the Order allows third parties to challenge confidentiality designations.
 

 Protective orders over discovery materials and orders of confidentiality over matters relating to other stages of litigation are subject to the same balancing of the litigants’ privacy interests and the public’s right to obtain information concerning judicial proceedings.
 
 Pansy,
 
 23 F.3d at 786. “The appropriate approach in considering motions to modify confidentiality orders is to use the same balancing test that is used in determining whether to grant such orders in the first instance, with one difference: one of the factors the court should consider in determining whether to modify the order is the reliance by the original parties on the confidentiality order.”
 
 Id.
 
 When addressing whether the parties had satisfied their burden of demonstrating good cause for maintaining the Protective Order, Judge Falk specifically enumerated the “good cause” factors. (Tr. 65:13-66:19) (considering factors of parties’ interest in the information, the reliance of the parties, the private nature of the case, promoting fairness and efficiency). Contrary to IPDA’s assertion, the need for an umbrella protective order was not one of the factors considered by Judge Falk. He simply noted the recognized benefits of umbrella protective orders as well as their enforceability in the face of First Amendment and common law right of access challenges when such orders prevent disclosure of trade secret and proprietary information. (Tr. 57-58 (citing
 
 Zenith,
 
 529 F.Supp. at 886)). Judge Falk noted that
 
 *DCCIX
 
 the parties’ reliance was significant, though not determinative, as to whether to modify the Protective Order. (Tr. 65:24-66:11). A review of the decision reveals that Judge Falk properly undertook a balancing test when upholding the Protective Order. To the extent that Judge Falk placed any emphasis on the parties’ reliance on the Order, that is consistent with language in
 
 Pansy
 
 recognizing that the extent of reliance is greater where trade secrets are involved. 23 F.3d at 790.
 

 C. Trade Secrets
 

 IPDA advances several arguments concerning trade secrets. First, IPDA argues that application of only the Restatement of Torts definition of trade secrets, without consideration of additional elements under state law, was error. Second, IPDA urges that Judge Falk did not balance the “trade secret” interest of the parties against any interest of IPDA and, instead, effectively accorded an irrebuttable presumption of secrecy for trade secrets. Third, IPDA argues that the court erred in concluding that the summary judgment papers consisted “almost entirely” of trade secrets. Fourth, IPDA maintains that the record lacked the specificity required under the
 
 Bank of Americcir-Leucadiar-Westinghouse
 
 balancing tests to rebut IPDA’s presumed right of access. It follows, according to IPDA, that the parties did not make a particularized showing of harm to overcome the presumption of access to the summary judgment papers.
 

 IPDA relies largely on
 
 Rohm and Haas Co.
 
 as support for its argument that Judge Falk erred in failing to consider additional elements under state law. In
 
 Rohm and Haas Co.,
 
 the Third Circuit articulated elements
 
 for
 
 a misappropriation of trade secrets claim, one of which was existence of a trade secret. 689 F.2d at 428-29. The decision made clear that a trade secret claim in federal court is governed not by federal common law but by state law.
 
 Id.
 
 This case is not about misappropriation of trade secrets. Judge Falk relied on
 
 Rohm and Haas Co.
 
 only in reference to the Restatement definition of trade secret. IPDA’s argument that Judge Falk erred in failing to consider state law factors lacks merit insofar as Judge Falk was not deciding a misappropriation claim.
 

 IPDA’s arguments concerning the balancing of “trade secret” interests are essentially a recast of its right-of-access argument. The Court finds no error in Judge Falk’s determination that the summary judgment papers contain trade secret information, as detailed in numerous declarations and certifications submitted by the parties. The parties set forth the specific nature of the trade secret information contained in the briefs including the ANDAs,
 
 [7]
 
 Drug Master Files, formulations, testing of products, and Warner-Lambert’s research and development history. As Judge Falk noted, “the summary judgment briefs and documents consist almost entirely of a detailed analysis of the parties’ clearly protectable and highly confidential trade secrets. These include the parties’ products, research and development, processes, secret chemical formulas, the parties’ suppliers.” (Tr. 61:1-6).
 

 IPDA also objects to Judge Falk’s ruling that the summary judgment briefs consisted almost entirely of trade secrets. Specifically, IPDA argues that validity
 
 *DCCX
 
 challenges and non-infringement defenses, as here, do not rely upon trade secrets. An infringement analysis has two steps-claim construction and comparison of the properly construed claims to the accused product. Trade secrets are not among the relevant sources of information associated with claim construction. It follows, according to IPDA, that the subject summary judgment papers have more than just summary judgment standards when shorn of trade secrets or putative trade secrets.
 

 As to the existence of trade secret information, the sworn certifications and declarations of the parties support Judge Falk’s findings that the summary judgment briefs consist almost entirely of a detailed analysis of the parties’ trade secrets, processes, and formulations. The briefs necessarily discuss Warner-Lambert’s research and development history, the generics’ properties and formulations, their ANDAs, their Master Drug File, and Warner-Lambert’s tests of the generic formulations. And while it is true that claim construction of the Warner Lambert patent cannot be confidential because the patent itself and the prosecution history are public, comparing the construed claims to the accused product involves confidential information. Given the support in the record for Judge Falk’s determination as to trade secret information, this Court is not left with the definite conviction that a mistake has been committed. Nor is this Court of the opinion that the record lacks sufficient specificity in support of Judge Falk’s findings.
 
 See Joint Stock Soc’y,
 
 104 F.Supp.2d at 397 (noting that case law requires litigant to justify need for continued protection on an itemized basis, but does not require courts to justify their decisions by detailing how each and every document under seal warrants protection) (citing
 
 Leucadia,
 
 998 F.2d at 166). The court, of course, could not be expected to provide a document-by-document justification for the confidentiality of nearly 8,000 documents.
 

 D. Costs of Redaction
 

 IPDA objects to Judge Falk’s determination that it bear the cost of redaction, arguing that “[c]osts and expenses should be borne by those who benefit from secrecy, which by its very nature is not their right, but is rather in derogation of the right of the public.” That argument ignores the fact that the parties have established sufficient grounds for continuing the Protective Order and therefore have a recognized right to secrecy. This is not a case where the parties have requested redaction of documents to which IPDA has an unencumbered right of access; a fair allocation of costs in that instance might well include the parties. Here, it is only as an accommodation to IPDA’s interests that access to redacted versions of the documents has been ordered. IPDA itself requested documents redacted of trade secrets. It is eminently reasonable that IPDA bear the costs of redaction given that the benefit of redaction, if any, would inure to IPDA. Moreover, as Judge Falk recognized, IPDA’s application came after the parties had drafted, filed, and sealed their motion papers in reliance on the Protective Order, and retroactive redaction will be time-consuming and expensive. That Local Civil Rule 79.2 requires non-parties seeking briefs to pay copying costs further underscores the appropriateness of IPDA funding redaction.
 
 Cf. Charlie H. v. Whitman,
 
 213 F.R.D. 240, 252 (D.N.J.2003) (ordering that “[i]ntervenors shall pay the reasonable costs of redaction and copying for the documents that they select”).
 

 Another issue warrants comment. IPDA’s counsel raised the legitimate point before Judge Falk that the redaction process might result in IPDA paying for what
 
 *DCCXI
 
 amounts to useless information. In that regard, IPDA’s counsel proposed that he be given “attorney’s eyes only access” to the summary judgment material for purposes of assessing and/or challenging the information claimed to be protectable. Judge Falk declined to so order, noting that the parties would be obliged to redact protectable information in good faith. This Court agrees that the parties are obliged to act in good faith, and will not hesitate to enter appropriate sanctions if the parties fail to do so.
 

 E. Conclusion
 

 The Court finds no error in Judge Falk’s decision to deny IPDA’s Motion to modify the Protective Order and unseal the summary judgment papers. Judge Falk’s conclusion that the summary judgment papers consist largely of protectable trade secrets is soundly supported. Nor did Judge Falk err in determining that IPDA should bear the financial burden of paying for redaction. The Court will therefore affirm the decision of Judge Falk to deny IPDA’s Motion to modify the Protective Order and unseal the summary judgment papers. IPDA is entitled to access the summary judgment papers redacted of trade secret and proprietary information, but must bear the costs of that redaction process.
 

 Accordingly, on this 5th day of February 2004, it is
 

 ORDERED that the Motion of Warner-Lambert to Dismiss the Appeal of Interve-nor IPD Analytics, LLC from Magistrate Judge Falk’s September 29, 2003 Decision is denied; and it is further
 

 ORDERED that the Motion of Interve-nor IPD Analytics, LLC to Reconsider Magistrate Judge Falk’s September 29, 2003 Decision Denying the Motion of IPD Analytics, LLC for Modification of the Protective Order and Unsealing of the Summary Judgment Papers is denied; and it is further
 

 ORDERED that Magistrate Judge Falk’s September 29, 2003 Decision Denying the Motion of IPD Analytics, LLC for Modification of the Protective Order and Unsealing of the Summary Judgment Papers is affirmed.
 

 [1]
 

 . The Court will assume that the recitation of parties in the preamble is accurate and complete, unless informed otherwise by the parties.
 

 [2]
 

 . The target summary judgment papers include:
 

 a. Notice of Motion on behalf of all defendants for summary judgment invalidating the claims of Warner-Lambert’s Patent No. 6,054,482 (" '482 Patent”) under 35 U.S.C. § 112, first paragraph, together with declarations, and memoranda of law;
 

 b. Notice of Motion on behalf of all defendants for summary judgment invalidating claims of the ’482 Patent as indefinite under 35 U.S.C. § 112, second paragraph, together with declarations, and memoranda of law;
 

 c. Notice of Motion on behalf of all defendants for summary judgment of invalidity of claims 7 and 9 through 11 of the '482 Patent for failure to satisfy the written-description requirement, together with declarations and memoranda of law;
 

 d. Notice of Motion on behalf of defendants Purepac and Faulding for summary judgment of invalidity of the ’482 Patent for failure to comply with the written-description requirement, together with declarations and memoranda of law;
 

 e. Notice of Motion on behalf of all defendants for summary judgment of non-infringement of the '482 Patent, based on
 
 *DCXCIX
 
 Warner-Lambert’s inability to meet its burden of proof, together with declarations and memoranda of law;
 

 f. Notice of Motion on behalf of all defendants for summary judgment of non-infringement of claims 7 through 11 of the '482 Patent, together with declarations and memoranda of law;
 

 g. Notice of Motion on behalf of defendants Purepac and Faulding for summary judgment of non-infringement based on use of an adjuvant excluded from claims 7 through 11 of the '482 Patent, together with declarations and memoranda of law; and
 

 h.Declarations in support of and in opposition to a motion by Ivax and related defendants for summary judgment of non-infringement based on use of an adjuvant excluded from claims 7 through 11 of the '482 Patent, together with declarations and memoranda of law.
 

 [3]
 

 . The Court has treated IPDA’s Motion in expedited fashion due to the important competing interests at stake in this case.
 

 [4]
 

 . The Parties filed seven declarations/certifications describing the trade secret information disclosed in the summary judgment materials.
 

 [5]
 

 . Much of the Third Circuit case law is confined to the common law right of access.
 
 See, e.g., Bank of Am. Nat’l Trust & Sav. Ass’n v. Hotel Rittenhouse Assocs.,
 
 800 F.2d 339, 343 (3d Cir.1986) (declining to "decide whether [the right of access] might also be grounded on the First Amendment");
 
 Republic of the Philippines v. Westinghouse Elec. Corp.,
 
 949 F.2d 653, 659 (3d Cir.1991) (acknowledging First Amendment right of access but limiting analysis to common law);
 
 Leucadia, Inc. v. Applied Extrusion Techs., Inc.,
 
 998 F.2d 157, 161 (3d Cir.1993) (same). Although the Third Circuit has acknowledged that its opinions may be read to suggest that different standards apply depending on whether access to records is sought under the common law right of access or under the First Amendment,
 
 Bank of America,
 
 800 F.2d at 344, common to both standards is a presumptive right of access that is subject to competing interests.
 

 [6]
 

 . IPDA also argues that it is a "member of the press” for First Amendment purposes. However, IPDA's claim that it is a member of the press does nothing to advance its argument insofar as the First Amendment typically does not afford the press any greater right to information than the general public.
 
 See Nixon v. Warner Communications, Inc.,
 
 435 U.S. 589, 609, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). IPDA concedes as much, stating in its reply brief that "[a]s to [the] argument that members of the press have no greater rights than the public, IPDA agrees.” (IPDA Reply Br. at 5);
 
 see also
 
 Tr. 13:16-14:2 (IPDA counsel stating that "newspapers don't have any special right of access, according to the Supreme Court and according to the Third Circuit, which says, quite clearly, all parties seeking public access stand on equal footing regardless of their motive.”).
 

 [7]
 

 . ANDAs are confidential under federal law. 21 C.F.R. § 314.430(b)-(d). It stands to reason that IPDA should not be able to gain access to that information through a court case arising out of an ANDA filing when it could not obtain the information in the ANDA filing directly.